# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH ROMAH, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 06-698 |
| DR. EDWARD SCULLY, ET AL., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER

This case is a personal injury action in the field of medical malpractice stemming from an "unnecessary surgery" allegedly performed at Defendant Toronto General Hospital[1] on or about December 15, 2005. Plaintiff alleges that, at the time of the filing of his Complaint, he had[2] "a non-life threatening medical condition called Endocarditis[3], an infection of the heart valve." (Docket No. 1, at ¶9). In particular, Plaintiff alleges that while under the care of an attending physician at Toronto General Hospital for pneumonia and strep throat, on or about October 11, 2005, Plaintiff was taken into custody on a warrant[4] issued by the United States and informed (by an unnamed individual) that "he would not be sent back to the United States without heart

---

[1] Plaintiff filed his Complaint naming as a defendant (amongst others) Toronto General Hospital; however, Defendant Toronto General Hospital asserts that it was incorrectly identified as such, and instead refers to itself as Universal Health Network ("UHN"). For the purposes of ease of reference, the Court hereinafter will refer to Defendant Toronto General Hospital as UHN.

[2] It is unclear from the Complaint whether Plaintiff still has endocarditis, especially in light of the "unnecessary surgery."

[3] Endocarditis is the inflammation of the endocardium, which is the innermost tunic of the heart. Stedman's Medical Dictionary 568-69 (26th ed.).

[4] Plaintiff's Complaint does not provide any details as to the issued warrant.

surgery to correct the endocarditis." (Docket No. 1, at ¶11). From October 17, 2005 to December 15, 2005, Plaintiff alleges that he refused surgery on three separate occasions, presumably all while in the custody of law enforcement authorities at Defendant Toronto General Hospital. (Docket No. 1, at ¶15). Regardless, according to the Plaintiff, "Defendant Toronto General Hospital performed the unnecessary surgery." *Id.* Four days thereafter, Plaintiff alleges that Defendant Toronto General Hospital transferred him to Maplehurst Correctional Institute where, on or about December 21, 2005, Plaintiff suffered a stroke.[5] (Docket No. 1, at ¶17). Plaintiff's factual recitation abruptly ends there.[6] Nevertheless, based thereon, Plaintiff filed the instant Complaint against (amongst others) Defendant UHN, the last remaining Defendant in this action. For the following reasons, Defendant UHN's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process [DE 50] is granted.

## PROCEDURAL BACKGROUND

On May 26, 2006, Plaintiff filed his Complaint, alleging one count of medical malpractice and naming the following as Defendants: Dr. Edward Scully, Maplehurst Correctional Complex ("Maplehurst"), UHN, Toronto Jail, Ministry of Community Safety and Correctional Services ("Ministry"), and Tracey Jones. On May 30, 2006, summons were issued as to all Defendants. On September 15, 2006, summons were reissued as to Defendants Maplehurst, UHN, Toronto Jail, and Ministry. On October 25, 2006, Plaintiff filed a Notice of Confirmation of Service of Canadian Defendants, which consisted of a letter from an

---

[5] Plaintiff provides no further factual background as to this claim.

[6] The Court notes that Plaintiff impliedly concedes that all of the underlying facts giving rise to the instant Complaint occurred in Canada. (*See* Docket No. 54, at 1-2).

2

international litigation support service company to counsel for the Plaintiff informing counsel that "the Central Authority of Canada received all six of [his] Hague requests" and that "it takes an average 2-4 months before proof service is returned from Canada." (Docket No. 3).[7]

On January 17, 2007, Defendants Maplehurst, Toronto Jail, Ministry, and Jones filed a Motion to Dismiss, to which Plaintiff responded on March 5, 2007. On January 19, 2007, Defendant UHN filed a Motion to Dismiss for Lack of Jurisdiction and Insufficient Service of Process, to which Plaintiff responded on March 6, 2007. On March 7, 2007, after having held a telephonic status conference that same day, Judge Thomas M. Hardiman entered an Order granting with prejudice the motion to dismiss filed by Defendants Maplehurst, Toronto Jail, Ministry, and Jones,[8] but denying without prejudice the motion to dismiss filed by Defendant UHN. As to the latter, the Court ordered that Plaintiff shall have ninety (90) days, or until June 5, 2007, within which to take discovery limited to the issue of personal jurisdiction as to the remaining Defendants, i.e., Scully and UHN.[9]

---

[7]

The Court notes that Plaintiff has not filed a proof of service in this case as to any of the Defendants. *See* Fed.R.Civ.P. 4(l) ("If service is not waived, the person effecting service shall make proof thereof to the court. ... Failure to make proof of service does not effect the validity of the service. The court may allow proof of service to be amended.").

[8]

On the same day, the Clerk of Court entered Judgment in favor of Defendants Maplehurst, Toronto Jail, Ministry, and Jones.

[9]

On April 6, 2007, this case was reassigned to the undersigned Judge. On August 8, 2007, the Court issued an Order advising Plaintiff that his Complaint as to Defendant Scully would be dismissed, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m) for failure to make service upon said Defendant within 120 days of the filing of the Complaint, unless Plaintiff shows good cause by August 22, 2007 why such service has not been made on said Defendant within that specified time period. On August 24, 2007, considering Plaintiff's failure to respond to this Court August 8, 2007 Order to Show Cause, the Court entered an Order dismissing without prejudice Plaintiff's Complaint as to Defendant Scully. Therefore, at this point in the litigation, only Defendant UHN remains.

On August 13, 2007, the Court entered a Case Management Order and set the following deadlines (relevant here): Defendant UHN shall file a responsive pleading to Plaintiff's Complaint on or before August 27, 2007. On August 27, 2007, Defendant UHN filed the instant motion to dismiss.[10] On September 17, 2007, Plaintiff filed his Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process. On September 19, 2007, Plaintiff filed numerous exhibits, which were sealed on September 21, 2007. Finally, on October 1, 2007, Defendant UHN filed its Reply Memorandum of Law in Support of Motion of the University Health Network to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process.

In the instant motion, Defendant UHN moves to dismiss the claims asserted against it for lack of jurisdiction over the person pursuant to Federal Rule of Civil Procedure 12(b)(2) and/or for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). As to the former theory supporting dismissal, Defendant UHN asserts that Plaintiff cannot establish personal jurisdiction over it (a non-resident Defendant) in that "UHN does not conduct business in or have any regular contacts with Pennsylvania" (general jurisdiction) and UHN "has not directed activities to Pennsylvania or had contacts with Pennsylvania in connection with Plaintiff's alleged claims" (specific jurisdiction). (Docket No. 51, at 4-5). As to the latter theory supporting dismissal, Defendant UHN asserts that service was insufficient here under Rule 4(k) because UHN is not subject to personal jurisdiction in the Commonwealth of Pennsylvania. (Docket No. 51, at 9-10). In support of its arguments, Defendant offers an Affidavit of Bella

---

[10] On September 18, 2007, Plaintiff received a quality control message instructing him to re-file his response brief because it lacked a signature line as well as a certificate of service. On September 19, 2007, Plaintiff re-filed his response brief using an errata event and implementing the appropriate corrections.

4

Martin, General Counsel of UHN, in which she asserts that UHN "does not have systematic or continuous contacts with the United States or, specifically, the Commonwealth of Pennsylvania." (Docket No. 51, Exh. A., at ¶5). In particular, the affiant asserts that UHN (1) does not maintain or own, control, or operate facilities in the United States or Pennsylvania; (2) does not own any real or personal property in the United States or Pennsylvania; (3) does not maintain any bank accounts in the United States or Pennsylvania; (4) does not have any officers or employees or maintain any office or place of business in the United States or Pennsylvania; (5) does not sell goods or services or advertise for or otherwise solicit the sale of goods or services in the United States or Pennsylvania; (6) does not do business in the United States or Pennsylvania; and (7) that, as to the contracts offered by Plaintiff as a basis for jurisdiction, UHN negotiated and executed its contracts with the University of Pittsburgh in Canada and that the work performed by UHN pursuant to the contracts was performed in Canada and not in Pennsylvania. (*See* Docket No. 51, Exh. A., at ¶5.A-H).[11]

## STANDARD

A court may dismiss a complaint for lack of jurisdiction over the person. Fed.R.Civ.P. 12(b)(2). A defendant bears the initial burden of raising a lack of personal jurisdiction defense. *See* Fed.R.Civ.P. 12(h)(1); *National Paintball Supply, Inc. v. Cossio*, 996 F.Supp. 459, 460 (E.D. Pa. 1998). However, "[w]here the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts

---

[11] The Court notes that with exception of the contracts, Plaintiff proffers no other evidence in contradiction to the affiant's assertions.

with the forum state (general jurisdiction)". *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3rd Cir. 1993) (citations omitted). "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation and citations omitted); *see also Saudi v. Acomarit Maritimes Services, S.A.*, 245 F.Supp.2d 662, 667 (E.D. Pa. 2003). "Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1986)).

When deciding a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint. *Chocallo v. I.R.S. Dept. of the Treasury*, Civil Action Nos. 04-3737, 06-539, 2007 WL 2071880, at *8 (E.D. Pa. July 16, 2007) (citing *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). Nevertheless, "a plaintiff may not solely rely on bare pleadings to satisfy his jurisdictional burden. Rather, the plaintiff must offer evidence that establishes with reasonable particularity sufficient contact between the defendant and the forum state to support jurisdiction." *Poole*, 122 F.Supp.2d at 557 (citing *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *see also Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996) ("But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper"); *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990)

(providing that a "plaintiff must sustain [his] burden of proof through sworn affidavits or other competent evidence") (internal quotation and citations omitted). In fact, by its nature, a motion to dismiss under "Rule 12(b)(2) 'requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies.'" *Clark v. Matsushita Elec. Indus. Co., Ltd.*, 811 F.Supp. 1061, 1064 (M.D. Pa. 1993) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)). The Court in *Time Share Vacation Club* provided further explanation:

> Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. Contrary to the dissent's suggestion, therefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Clark*, 811 F.Supp. at 1064 -1065 (quoting *Time Share Vacation Club*, 735 F.2d at 66 n. 9).

## ANALYSIS

As an initial point, while neither party raises the issue, even though both Plaintiff and Defendant UHN have conducted discovery as to personal jurisdiction and have filed materials outside of the pleadings in support of their respective positions, the Court declines to convert the instant motion to a motion for summary judgment because "[a] rule 12(b)(2) motion cannot be treated as one for summary judgment."[12] *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d

---

12 The Court notes that while the *Patterson* Court recognized that situations exist "where 'the question of the district court's jurisdiction [is] entwined with the ultimate question on the merits' ", *Patterson*, 893 F.2d at 604 (citing *International Ass'n of Machinists v. Northwest Airlines*, 673 F.2d 700, 710 (3d Cir. 1982)), the Court finds that the instant case does not constitute one of those situations.

Cir. 1990); *see also Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) ("Dismissing a claim for lack of personal jurisdiction is more appropriately done by way of Rule 12(b)(2) of the Federal Rules of Civil Procedure, rather than Rule 56"); *Empire Kosher Poultry, Inc. v. Hebrew Nat. Kosher Foods*, 555 F.Supp. 917, 920 (D.C. Pa. 1983) (citation omitted) ("Although the record in this case consists of this document, the complaint, affidavits and depositions, it is still proper to consider defendant's motion as one to dismiss rather than one for summary judgment because the basis for the motion is the lack of personal jurisdiction"). Further, the last sentence of Rule 12(b), which governs conversion of a motion to dismiss to a motion for summary judgment, only refers to the defense numbered (6) as opposed to defenses numbered (2) or (5) as a basis for conversion to a motion for summary judgment when considering matters outside the pleadings. Fed.R.Civ.P. 12(b); *Leshore Calgift Corp. v. Total Graphics Inc. Marketing Incentives, a Div. of Total Graphics, Inc.*, 668 F.Supp. 412, 416 (M.D. Pa. 1986) (providing that nonresident defendant corporation's motion to dismiss could not be treated as one for summary judgment because it filed a motion to dismiss for lack of jurisdiction over the person, insufficiency of process, insufficiency of service of process, and improper venue, and Rule 12(b) only referred to conversion of a motion to dismiss when filed for failure to state claim upon which relief could be granted); *Reichhold, Inc. v. U.S. Metals Refining Co.*, Civil No. 03-453 (DRD), 2007 WL 2363168, at *1 (D. N.J. Aug. 14, 2007) ("Additionally, because Rule 56 only requires that a Rule 12(b)(6) motion be treated as one for summary judgment where the parties have presented matters outside of the pleadings, the court will not convert Defendants' motion [pursuant to Rule 12(b)(1)] to a summary judgment motion"). Accordingly, the Court will

consider the materials filed by the parties (in addition to Plaintiff's Complaint) and will not convert the instant motion to dismiss to a motion for summary judgment.[13]

The determination of personal jurisdiction over a defendant requires a two-step inquiry. First, a court must determine whether the long-arm statute of the forum allows courts of that state to exercise jurisdiction over the defendant. Fed.R.Civ.P. 4(e)(1). Second, if the forum state allows jurisdiction, then the court must determine if exercising personal jurisdiction over the defendant is consistent with the Due Process Clause of the United States Constitution. *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

Here, the Pennsylvania long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b) (1981) (entitled, "Bases of personal jurisdiction over persons outside this Commonwealth").[14] Because the Pennsylvania long-arm statute is coextensive with the dictates of the United States Constitution, this Court's "jurisdictional inquiry turns exclusively on whether the exercise of personal jurisdiction would conform with the Due Process

---

[13] Moreover, as noted above, neither party has made any reference to converting the motion to dismiss to a motion for summary judgment.

[14] While not cited or raised by either of the parties, the Court notes that jurisdiction is arguably appropriate under section 5322(a)(2), which provides that a court may exercise personal jurisdiction over a person who contracts to supply services or things in the Commonwealth. 42 Pa. C.S.A. § 5322(a)(2); *see also* 42 Pa. C.S.A. § 5301(a)(2) (providing that "person" encompasses a corporation). However, because the Pennsylvania long-arm statute also requires that jurisdiction must satisfy due process, in order to establish jurisdiction over a non-resident defendant, a plaintiff must demonstrate that the defendant maintains minimum contacts with the forum state and that subjecting the defendant to this Court's jurisdiction based on these limited contacts comports with "traditional notions of fair play and substantial justice." *Bizzare Foods, Inc. v. Premium Foods, Inc.*, No. Civ.A. 02-CV-9061, 2003 WL 21120690, at *5 (E.D. Pa. May 16, 2003) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).

Clause." *Poole v. Sasson*, 122 F.Supp.2d 556, 558 (E.D. Pa. 2000); *see also Mickelburgh Machinery Co., Inc. v. Pacific Economic Development Co.*, 738 F.Supp. 159, 161 (E.D. Pa. 1990).

Due process requires that the defendant have "minimum contacts" with the forum state, and that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Remick*, 238 F.3d at 255 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987)) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Once minimum contacts are established, the court must decide whether the exercise of personal jurisdiction over the defendants would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). When determining whether personal jurisdiction exists, the court must resolve the question based on the circumstances that the particular case presents. *Burger King*, 471 U.S. at 485.

A court may exercise personal jurisdiction based on a defendant's general or specific contacts with the forum. The Court now turns to the two bases for jurisdiction: general jurisdiction and specific jurisdiction. *See Mellon Bank, supra*, 983 F.2d at 554.

1. *General jurisdiction* ("Continuous and systematic" contacts with forum state)

Defendant UHN asserts that Plaintiff's Complaint alleges no facts subjecting it to the general jurisdiction of this Court. In addition, Defendant UHN argues that the contracts entered

into by Defendant UHN with a Pennsylvania corporation are insufficient to subject it to general jurisdiction.[15] In response, Plaintiff argues that Defendant UHN has "continuous and systematic contacts" with the instant forum "in the field of medicine and tourism", which "is evident through the eight contracts that UHN produced during discovery."[16] (Docket No. 52, at 5). Plaintiff offers no other competent evidence in favor of general jurisdiction, and thus this Court must consider whether the purported two contracts between Defendant UHN and a non-party to this action rise to the level of "continuous and systematic contacts" for purposes of general jurisdiction.

"General jurisdiction exists when, regardless of where the particular events giving rise to the litigation occurred, the defendant has continuous and systematic contacts with the forum state." *Poole*, 122 F.Supp.2d at 558 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 9 & 416 (1984)); *Hall-Woolford Tank Co., Inc. v. R.F. Kilns, Inc.*, 698 A.2d 80, 82 (Pa. Super. 1997) ("General jurisdiction is founded upon a defendant's general activities within the forum which evidence continuous and systematic contacts with the state") (citation omitted). The Third Circuit has held "that the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction." *Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3rd Cir. 1987) (citations omitted). In fact, "[t]he nonresident's contacts to the forum must be continuous and substantial." *Id.* (citations omitted).

---

[15] Because the evidence submitted by Plaintiff was filed under seal, the Court will only generally refer to said documents.

[16] In actuality, the sealed exhibits attached by Plaintiff consist of merely two contracts and three amendments to one of the contracts. Further, the two contracts involve Defendant UHN and the same, non-party.

The mere existence of a contract, standing alone, does not confer general jurisdiction over a defendant. *See e.g., DiVeronica Bros.*, 983 F.2d at 557 (providing that "[c]ontracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant ...") (citing *Farino*, 960 F.2d at 1223); *Mickleburgh Machinery Co., Inc. v. Pacific Economic Development Co.*, 738 F.Supp. 159, 162 (E.D. Pa. 1990) ("It should be noted that the mere entrance of a non-resident defendant into a contract with a Pennsylvania corporation does not bring the defendant within the jurisdiction of Pennsylvania courts"); *Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"). "Rather, the totality of the parties' dealings, including the contract negotiations, contemplated future consequences of the contract, and actual course of dealing must be evaluated in order to determine whether the foreign defendant is subject to suit in the plaintiff's chosen forum." *Hall-Woolford Tank*, 698 A.2d at 83 (citing *Kubik v. Letteri*, 614 A.2d 1110, 1114 (Pa. 1992) (citing *Burger King*, 471 U.S. at 478)). "It is necessary that the defendant's actions are purposeful and voluntary and give rise to the cause of action." *Aventis Pasteur, Inc. v. Alden Surgical Co., Inc.*, 848 A.2d 996 (Pa. Super. Ct. 2004).

Here, Plaintiff offers no other evidence except the existence of said contracts, the subject matter of which, based on the Court's review, bear no relationship to the instant action.[17]

---

17
   In fact, a significant portion of the purported contracts filed under seal (approximately 62 out of 115 pages) consist of appendices, providing substantive background information as to the subject matter to each of said contracts. Further, as a practical matter, the Court notes that although Plaintiff filed said contracts under seal, both Plaintiff and Defendant discuss the substance thereto in their briefs (as well as in Defendant's attached affidavit).

Furthermore, Plaintiff merely proffers said contracts under seal without any affidavits or other form of testimony; in fact, Plaintiff presents no evidence (or even argument) as to negotiations, future consequences, and the actual course of dealing. *See Burger King, supra*, 471 U.S. at 478; *see also Mickleburgh Machinery Co.*, 738 F.Supp. at 162-63 (finding that contract formed basis of personal jurisdiction entered into between the parties where defendant played "active role in developing and extending its contacts in the forum","initiated negotiations", and "communicated at frequent intervals and sent written correspondence to [plaintiff's] Pennsylvania headquarters on at least ten occasions"). What is more, in an affidavit attached to the instant motion, the General Counsel to Defendant UHN testifies that it "negotiated and executed" said contracts in **Canada** and that all "work performed" by UHN pursuant to said contracts was completed in **Canada**. (Docket No. 51, Exh. A. at ¶¶5.G-H).

In essence, Plaintiff relies on the existence of two contracts entered into between Defendant UHN and a non-party in order to establish jurisdiction in Pennsylvania but such is not enough. *See Hall-Woolford Tank*, 698 A.2d at 84 ("By merely entering into a contract with a Pennsylvania corporation, making several follow-up telephone calls and sending a payment invoice, it cannot be said that [defendant] purposefully availed itself of our state's benefits and protections such that it could reasonably anticipate being called to defend itself in our courts"). Plaintiff proffers no evidence to indicate that the purported contacts (i.e., the contracts) are continuous, systematic, and/or substantial; on the contrary, based on the evidence presented, each contact appears to be isolated and minimal. Accordingly, the Court finds that Plaintiff has failed

to meet his burden to demonstrate with reasonable particularity and through competent evidence Defendant UHN's continuous and systematic contacts with this forum.[18]

2.	*Specific jurisdiction* (Defendant's forum-related activities)

Defendant UHN asserts that because "[a]ll the matters complained of took place in Canada" and because "the record evidence demonstrates that Plaintiff's lawsuit does not arise out of contacts by UHN with Pennsylvania", there is no specific jurisdiction here. In response, Plaintiff argues that "there is specific jurisdiction where the Defendants acted in concert with a stated Global Impact goal."[19] (Docket No. 52, at 6).

"[S]pecific jurisdiction exists when the events *giving rise to the action* are related to the forum state and the defendant has minimum contacts with the forum state." *Poole*, 122 F.Supp.2d at 558 (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.8) (emphasis added); *see also Mellon Bank*, 983 F.2d at 554 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("Specific jurisdiction exists only where the Defendant has sufficient minimum contacts with the forum state that it 'should reasonably anticipate being haled into court there' "). Specific jurisdiction is established where the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate[ ] to' those activities." *BP Chemicals Ltd. v. Formosa Chemical & Fibre*

---

18

    In addition, *see* Docket No. 51, Exh. A. at ¶5 (providing that UHN "does not have systematic or continuous contacts with the United States or, specifically, the Commonwealth of Pennsylvania") (Affidavit of Bella Martin, General Counsel to Defendant UHN).

19

    Plaintiff fails to articulate what encompasses a "global impact goal" and the Court declines to speculate.

*Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King v. Rudzewicz*, 471 U.S.462, 472 (1995)).

Here, as noted by Defendant UHN, "[a]ll the matters complained of took place in Canada", (Docket No. 51, at 5), which is plain on the face of Plaintiff's Complaint. Further, to the extent Plaintiff argues that specific jurisdiction exists here, (*see* Docket No. 52, at 6), Plaintiff offers no evidence in support of his assertions. For example, Plaintiff argues the presence of specific jurisdiction based on the following:

> Here, there is specific jurisdiction where the Defendants acted in concert with a stated Global Impact goal. UHN is worldwide network with minimum contacts in Pennsylvania. Defendants promoted their commercial activity of medicine, lecturing, publishing in Pittsburgh and Philadelphia, Pennsylvania. Defendants herein used Plaintiff's body part, a prolapsed heart valve to add to their experience and knowledge of this condition against Plaintiff's will in furtherance of their being recognized as experts in this field. Plaintiff vehemently opposed this surgery. UHN, with a worldwide network, is having success attracting foreign patients to their hospitals and teaching facilities.

(Docket No. 52, at 6). The Court finds that the above purported "minimum contacts" are insufficient for purposes of specific jurisdiction for two reasons. First, none of the above allegations represent "events giving rise to the action"; on the contrary, the above represent general allegations of Defendant UHN's purported connections to this District completely unrelated to the instant action. And second, the purported minimum contacts proffered by Defendant, i.e., UHN's promotion of commercial activity, consists entirely of argument of counsel. Indeed, Plaintiff fails to offer any evidence let alone "competent evidence".

Accordingly, the Court finds that Plaintiff has failed to meet his burden to establish with reasonable particularity sufficient contacts in order to form a basis for personal jurisdiction.[20]

Finally, in support of his argument that this Court has specific jurisdiction over UHN, Plaintiff relies upon *Walsh v. Chez*, 418 F.Supp.2d 781 (W.D. Pa. 2006), in which the parents of a deceased child brought a wrongful death action against the physician and clinic stemming from the unsuccessful treatment (occurring in Illinois) of the child's autism. The Court found that defendants had sufficient contact with Pennsylvania in order to establish jurisdiction where medical advice rendered during telephone calls and "an overall agreement" to monitor the child's treatment established personal jurisdiction. The Court finds that *Walsh* is factually inapposite to the instant case because there is no evidence demonstrating communications between Defendant UHN (or the allegedly involved physician) and Plaintiff, with the exception of Plaintiff's bald and unsupported assertion that "defendants had contact with Pennsylvania before, during, or after plaintiff's confinement in Ontario"–such a statement is not supported by record evidence and

---

[20]

In addition to the above, Plaintiff also alleges the following as to a basis for specific jurisdiction:

> Forum-related activities including advertising and promoting the forum's Pennsylvania residents to: visit, take in the cultural activities of a big Metropolitan city such as Toronto, Canada, work or engage in business in Canada, public relations and advertising in Pennsylvania Defendant's medical services, on the internet and through professional magazines, writings on medical topics in medical journals, publishing medical statistics and promoting services of expert witnesses. There is a lure of the promoted image of Toronto. Pennsylvania citizens see ads on television that promote a certain ambiance expectation. It is on this backdrop that a commercial business relationship exists between UHN and Pennsylvania citizens.

Docket No. 52, at 4. Despite the prose that attempts to convince this Court of the presence of jurisdiction, Plaintiff offers no competent evidence in support of the alleged activities of "advertising and promoting" of Toronto to the residents of this District. Further, assuming *arguendo* that Plaintiff supported his contention of the "lure of the promoted image of Toronto" within this District with documentary evidence, such may not necessarily confer personal jurisdiction over Defendant UHN, but perhaps the City of Toronto tourism board.

thus cannot form the basis for the Court's exercise of personal jurisdiction over Defendant UHN.[21]

**ORDER**

Based on the foregoing, the Court **GRANTS** Defendant Toronto General Hospital's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process [DE 50]. Accordingly, the Court dismisses Plaintiff's Complaint as to Defendant Toronto General Hospital, herein referred to as UHN, and the Court directs the Clerk of Court to mark the above captioned matter as CLOSED.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: November 13, 2007.

cc: All counsel of record.

---

21
 Because the Court finds that minimum contacts do not exist here, the Court need not consider whether exercising jurisdiction over Defendant UHN comports with fair play and substantial justice. Likewise, because the Court finds that dismissal is appropriate under Rule 12(b)(2) for a lack of personal jurisdiction, the Court declines to consider the merits of Defendant's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(5) for insufficient service of process.